NR:RCH/EMR
F.#2017R01784

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (917) 807-8799 THAT IS STORED AT PREMISES CONTROLLED BY SPRINT | **SEARCH WARRANT APPLICATION FOR HISTORICAL CELL-SITE INFORMATION**<br><br>Case No. 19-MC-832 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, MELISSA GALICIA, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (917) 807-8799 (the "SUBJECT TELEPHONE"), that is stored at premises controlled by Sprint Corporation ("Sprint"), a wireless telephone service provider headquartered in Overland Park, Kansas. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Sprint to disclose to the government copies of the information further described in Section I of Attachment B.   Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.     I am a Special Agent with the Federal Bureau of Investigation, and have been for approximately three years.   I have participated in numerous investigations involving search

warrants, including the execution of search warrants on places of business, private homes, and arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 666 (theft concerning programs receiving federal funds) and 18 U.S.C. § 1347(a) (health care fraud) have been committed by Marina Golfo. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5.      In April 2017, the New York City Department of Investigation (the "DOI") initiated an investigation into fraudulent billing allegations in connection with the New York State Early Intervention Program (the "EIP"). The EIP is a New York State program that provides remedial services to developmentally delayed children from birth to age three. Such services may include physical, occupational, and speech therapy; special instruction; and social work services. These services are provided by individual therapists who are either subcontractors or employees of agencies that hold EIP contracts with the New York State Department of Health (the "NYSDOH"). The New York City Department of Health and Mental Hygiene (the "DOHMH") administers the EIP in New York City and conducts audit, quality assurance, and compliance oversight of the EIP.

While the majority of costs associated with EIP treatment are covered by New York State funding, some of the cost is covered by city and federal funding, as well as, occasionally, private insurers.

6.       The DOI investigation concerned allegations that certain therapists employed by agencies holding EIP contracts who were assigned to treat developmentally delayed children were instead, at various points, forging session notes and invoices for treatment sessions that never occurred.  As a result, these individuals were receiving payment for non-existent treatment sessions. In order to receive payment for an EIP therapy session, a therapist must provide a written report documenting his/her session with a child.  Sessions generally occur in half-hour or one-hour increments.  These session notes detail the date, time and place of the session as well as some details of the therapy given and the child's progress in response to the treatment.  Session notes must be signed by the therapist and the parent or guardian of the child immediately after the EIP therapy session ends.

7.       The DOI investigation revealed that Marina Golfo ("Golfo"), acting as an EIP therapist, forged numerous session notes, billed for those non-existent therapy sessions and received payment for these EIP services that she never provided.  DOI investigators reviewed EIP session notes and invoice data that Golfo submitted between approximately January 2016 and September 2018.  From their review of these records, DOI investigators uncovered numerous examples of forged session notes for sessions that never occurred.

8.       As part of the investigation, DOI investigators interviewed the parents of children identified in numerous session notes as the patients of Golfo.  Several parents and guardians who reviewed the relevant session notes confirmed to DOI investigators that Golfo had not in fact provided therapy sessions to the children identified in the session notes.  Further, the notes documenting these alleged sessions were forgeries, oftentimes containing the forged signature of

3

the parent.  In addition, DOI investigators also spoke with parents who informed the investigators that no session occurred at dates and times for which Golfo had claimed a session was performed in her session notes.

9.    According to telephone records obtained from Verizon Wireless, a wireless telephone service provider the listed subscriber for the SUBJECT TELEPHONE was "Marina Golfo" from on or about February 8, 2009 until September 27, 2017, both dates being approximate and inclusive.  According to telephone records obtained from Sprint on or about May 10, 2018, Sprint became the wireless telephone service provider for the SUBJECT TELEPHONE on September 27, 2017.  According to those same Sprint telephone records, the listed subscriber for the SUBJECT TELEPHONE has been "Marina Golfo" since on or about September 27, 2017. Based on these records and the investigation to date, I believe that Golfo is the user of the SUBJECT TELEPHONE.

10.    DOI investigators analyzed the telephone records for the SUBJECT TELEPHONE and found numerous instances in which Golfo utilized the SUBJECT TELEPHONE for significant periods of time during a time period that she billed for a purported therapy session.  DOI investigators identified numerous occasions in which Golfo engaged in telephone calls on her cellular telephones for 15% or more of an entire therapy session for which they billed and received payment.  DOI investigators also identified numerous occasions in which Golfo exchanged a high number of text message communications, specifically at least one text message communication every five minutes, during entire therapy sessions for which she billed and received payment. According to DOHMH officials, EIP therapists cannot treat a child while using the telephone, because EIP therapists must monitor, interact with, and take notes about the child throughout the entire session.  As a result, the telephone records associated with the SUBJECT TELEPHONE for

4

Golfo are, on numerous occasions, inconsistent with her claim that they properly billed for legitimate EIP therapy sessions.

11.     As part of this investigation, law enforcement authorities interviewed the parent and grandparent of one particular child (the "Child") who received EIP therapy sessions administered by Golfo between approximately October 2017 and September 2018. According to the parent and grandparent of the Child, Golfo administered EIP therapy sessions once or twice a week to the child during this time period, with the EIP therapy sessions lasting between approximately thirty minutes and one hour. Law enforcement authorities subsequently reviewed the session notes that Golfo submitted in connection with EIP therapy sessions purportedly performed by Golfo on the Child and found that Golfo falsely claimed in her session notes to have performed substantially more EIP therapy sessions on the Child than reported by the parent and grandparent of the Child. In numerous instances, Golfo falsely claimed in her session notes to have performed four hours of EIP therapy sessions per day, several days per week, on the Child, vastly overstating the thirty minutes or one hour of EIP therapy per week that the Child's parent and grandparent reported as occurring during this time period.

12.     Specifically, Golfo submitted session notes claiming to have performed EIP therapy sessions on the Child for the following time periods: four hours on January 2, 2018; four hours on January 3, 2018; four hours on January 4, 2018; four hours on January 5, 2018; four hours on January 6, 2018; four hours on January 8, 2018; four hours on January 9, 2018; four hours on January 10, 2018; four hours on January 11, 2018; four hours on January 12, 2018; four hours on January 15, 2018; four hours on January 16, 2018; four hours on January 17, 2018; four hours on January 18, 2018; four hours on January 19, 2018; four hours on January 22, 2018; four hours on January 23, 2018; four hours on January 24, 2018; four hours on January 25, 2018; four hours on

5

January 26, 2018; four hours on January 29, 2018; four hours on January 30, 2018; four hours on

January 31, 2018; four hours on February 1, 2018; four hours on February 2, 2018; four hours on

February 5, 2018; four hours on February 6, 2018; four hours on February 7, 2018; four hours on

February 8, 2018; four hours on February 9, 2018; four hours on February 12, 2018; four hours on

February 13, 2018; four hours on February 14, 2018; four hours on February 15, 2018; four hours

on February 16, 2018; four hours on February 19, 2018; four hours on February 20, 2018; four

hours on February 21, 2018; four hours on February 22, 2018; four hours on February 23, 2018;

four hours on February 26, 2018; four hours on February 27, 2018; four hours on February 28,

2018; four hours on March 1, 2018; four hours on March 2, 2018; four hours on March 5, 2018;

four hours on March 6, 2018; four hours on March 7, 2018; four hours on March 8, 2018; four

hours on March 9, 2018; four hours on March 12, 2018; four hours on March 13, 2018; four hours

on March 14, 2018; four hours on March 15, 2018; four hours on March 16, 2018; four hours on

March 19, 2018; four hours on March 20, 2018; four hours on March 21, 2018; four hours on

March 22, 2018; four hours on March 23, 2018; four hours on March 26, 2018; four hours on

March 27, 2018; four hours on March 28, 2018; four hours on March 29, 2018; four hours on

March 30, 2018; four hours on April 2, 2018; four hours on April 3, 2018; four hours on April 4,

2018; four hours on April 5, 2018; four hours on April 6, 2018; four hours on April 9, 2018; four

hours on April 10, 2018; four hours on April 11, 2018; four hours on April 12, 2018; four hours

on April 13, 2018; four hours on April 16, 2018; four hours on April 17, 2018; four hours on April

18, 2018; four hours on April 19, 2018; four hours on April 20, 2018; four hours on April 23, 2018;

four hours on April 24, 2018; four hours on April 25, 2018; four hours on April 26, 2018; four

hours on April 27, 2018; four hours on April 30, 2018; four hours on May 1, 2018; four hours on

May 2, 2018; four hours on May 3, 2018; four hours on May 4, 2018; four hours on May 7, 2018;

four hours on May 8, 2018; four hours on May 9, 2018; four hours on May 10, 2018; four hours

on May 11, 2018; four hours on May 14, 2018; four hours on May 15, 2018; four hours on May

16, 2018; four hours on May 17, 2018; four hours on May 18, 2018; four hours on May 21, 2018;

four hours on May 22, 2018; four hours on May 23, 2018; four hours on May 24, 2018; four hours

on May 25, 2018; four hours on May 28, 2018; four hours on May 29, 2018; four hours on May

30, 2018; four hours on May 31, 2018; four hours on June 1, 2018; four hours on June 4, 2018;

four hours on June 5, 2018; four hours on June 6, 2018; four hours on June 7, 2018; four hours on

June 8, 2018; four hours on June 11, 2018; four hours on June 12, 2018; four hours on June 13,

2018; four hours on June 14, 2018; four hours on June 15, 2018; four hours on June 18, 2018; four

hours on June 19, 2018; four hours on June 20, 2018; four hours on June 21, 2018; four hours on

June 22, 2018; four hours on June 25, 2018; four hours on June 26, 2018; four hours on June 27,

2018; four hours on June 28, 2018; four hours on June 29, 2018; four hours on July 2, 2018; four

hours on July 3, 2018; four hours on July 4, 2018; four hours on July 5, 2018; four hours on July

6, 2018; four hours on July 9, 2018; four hours on July 10, 2018; four hours on July 11, 2018; four

hours on July 12, 2018; four hours on July 13, 2018; four hours on July 16, 2018; four hours on

July 17, 2018; four hours on July 18, 2018; four hours on July 19, 2018; four hours on July 20,

2018; four hours on July 23, 2018; four hours on July 24, 2018; four hours on July 25, 2018; four

hours on July 26, 2018; four hours on July 27, 2018; four hours on July 30, 2018; four hours on

July 31, 2018; four hours on August 1, 2018; four hours on August 2, 2018; four hours on August

3, 2018; four hours on August 6, 2018; four hours on August 7, 2018; four hours on August 8,

2018; four hours on August 9, 2018; four hours on August 10, 2018; four hours on August 13,

2018; four hours on August 14, 2018; four hours on August 15, 2018; four hours on August 16,

2018; four hours on August 17, 2018; four hours on August 20, 2018; four hours on August 21,

2018; four hours on August 22, 2018; four hours on August 23, 2018; four hours on August 24, 2018; four hours on August 27, 2018; four hours on August 28, 2018; four hours on August 29, 2018; two hours on August 30, 2018; four hours on August 31, 2018; four hours on September 3, 2018; four hours on September 4, 2018; four hours on September 5, 2018; four hours on September 6, 2018; four hours on September 7, 2018; four hours on September 10, 2018; four hours on September 11, 2018; four hours on September 12, 2018; four hours on September 13, 2018; four hours on September 14, 2018; four hours on September 17, 2018; four hours on September 20, 2018; four hours on September 23, 2018; and four hours on September 25, 2018.

13.    In addition, law enforcement authorities presented the parent of the Child with session notes submitted by Golfo for EIP therapy sessions claimed by Golfo to have been performed on the Child during this time period that purportedly contained the parent's signature for a given EIP therapy session.  The parent of the Child identified numerous session notes in which the parent's signature had been forged on the EIP therapy session note submitted by Golfo.

14.    On or about February 22, 2019, a grand jury sitting in the Eastern District of New York returned a two-count indictment against Marina Golfo, charging her with: (i) theft concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A); and (ii) health care fraud, in violation of 18 U.S.C. § 1347(a).

15.    Based on the foregoing, I respectfully submit that there is probable cause to believe that Marina Golfo, who is the user of the SUBJECT TELEPHONE, has fraudulently billed for non-existent EIP therapy sessions on the dates listed in Attachment B.  Cell-site data for the SUBJECT TELEPHONE, as discussed below, will enable investigators to obtain information about the location of the SUBJECT TELEPHONE during the dates for which Golfo billed for the

aforementioned EIP therapy sessions and verify whether Golfo was present at the locations for which she billed EIP therapy sessions.

16.      In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

17.      Based on my training and experience, I know that Sprint can collect cell-site data about the SUBJECT TELEPHONE.  I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

18.      Based on my training and experience, I know that wireless providers such as Sprint typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the

9

subscriber to pay for wireless telephone service.  I also know that wireless providers such as Sprint typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT TELEPHONE's user or users and may assist in the identification of co-conspirators and/or victims.

**AUTHORIZATION REQUEST**

19.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

20.     I further request that the Court direct Sprint to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on Sprint, who will then compile the requested records

at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

MELISSA GALICIA
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on_____3/27_____, 2019

THE HONORABLE LOIS BLOOM]
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (917) 807-8799 (the "SUBJECT TELEPHONE"), that are stored at premises controlled by Sprint ("the Provider"), headquartered in Overland Park, Kansas.

**ATTACHMENT B**

**Particular Things to be Seized**

I.   **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the SUBJECT TELEPHONE listed in Attachment A for the time period  January 2, 2018 to September 25, 2018;

a.   The following information about the customers or subscribers of the Account:

i.   Names (including subscriber names, user names, and screen names);

ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii.   Local and long distance telephone connection records;

iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v.   Length of service (including start date) and types of service utilized;

vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

       viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii.  information regarding the cell towers and sectors through which the communications were sent and received.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 666 involving Marina Golfo from January 2, 2018 through September 25, 2018.